Mrs. Lucille Ross, widow of William Ranson, brought this suit against William D. Tynes, the owner of a Chevrolet truck, and Robert Polk, its driver, claiming $10,231 on her own behalf and $10,000 on behalf of her minor son, William Ranson, Jr., for the negligent killing of her husband. The petition alleges that on April 16th, 1941, about 3:35 p.m. William Ranson was walking on the sidewalk near the intersection of S. Claiborne and Jackson Avenues; that as the Chevrolet truck, which was being driven on S. Claiborne *Page 81 
Avenue, neared Jackson Avenue the right rear wheels (there were two), in some manner, became detached from the axle and rolled on the sidewalk striking Ranson and injuring him to such an extent that he died a few minutes thereafter.
Defendants admit that the accident occurred in the manner stated by plaintiff, but deny responsibility on the ground that the reason for the detachment of the right rear wheels of the truck was the "failure in one of the steel parts which comprise the bearings and the nut and the lock washer which work as a unit in the hub of the wheel"; which "said failure resulted from a latent and undiscoverable defect in the steel or other metal of which said working parts were composed; that the defendants had no knowledge nor warning of said defects nor do defendants know of any method of inspection which was at their disposal by which they could have discovered such defect; that defendants do not know the name of the manufacturer of the steel or metal which went into said moving parts, nor do they know the name of the manufacturer of the parts themselves, all notwithstanding diligent inquiry".
There was judgment below in plaintiff's favor on her own behalf in the sum of $3,231 and on behalf of her minor son in the sum of $2,769, making a total of $6,000. From this judgment defendants have appealed.
The plaintiff relies upon the doctrine of res ipsa loquitur. The defendants contend that even if this doctrine is applicable, they have overcome its effect by showing that the accident was unavoidable, notwithstanding the fact that they had given the truck proper care and attention and had had it timely and properly inspected and lubricated.
In our opinion the facts of this case, which are not in dispute, present a classic example of the proper application of the doctrine of res ipsa loquitur. Plaintiff was killed while walking on the sidewalk by a double wheel which became detached from a passing truck. It follows that there is an inference, or presumption of negligence on the part of defendants. In other words, when an injury is caused by an instrumentality under the exclusive control of the defendant, as in this case, and it is such as would not ordinarily happen if the party having control of the instrumentality had used proper care, there arises an inference or presumption of negligence. Whether the evidence is such as to exonerate the defendants remains to be seen.
The question of what is proper care is stated by Mr. Huddy as follows:
"Generally speaking, it is the duty of one operating a motor vehicle on the public highways to see that it is in reasonably good condition and properly equipped, so that it may be at all times controlled, and not become a source of danger to its occupants or to other travelers.
"To this end, the owner or operator of a motor vehicle must exercise reasonable care in the inspection of the machine, and is chargeable with notice of everything that such inspection would disclose. This rule applies whether the operator is the owner of the vehicle or rents it from another, or permits another to use it, or lets it to another for hire. But, in the absence of anything to show that the appliances were defective, the owner or driver is not required to inspect them before using the car or permitting it to be used." 3 Huddy: Cyclopedia of Automobile Law, 9th Ed. Section 71.
It appears that William D. Tynes bought a new 1940 Chevrolet truck on October 19th, 1939, and that because of the fact that trucks of this type are not permitted to operate on the public highways with a load exceeding eight thousand pounds, whereas tandem trucks are allowed to carry fourteen thousand pounds (Act No. 286 of 1938), Tynes, with the object of converting his truck into a tandem truck, purchased an abandoned 1936 truck in Tylertown, Mississippi, and employed the Simmons Iron Works, also of Tylertown, to cut off the rear end of the old truck and weld it onto the new truck. Thus the truck was converted from one with one rear axle and two double wheels into one with two rear axles and four double wheels. It was then operated by Tynes as a public carrier of freight from Tylertown, Mississippi to New Orleans, Louisiana, a distance one way of one hundred and twenty miles, and made from three to five round trips weekly. From the time the truck was converted into a tandem to the date of the accident, it had traveled in round figures seventy-five thousand miles.
Defendants cite a number of authorities on latent defects in automobiles. We quote the following from one of them. *Page 82 
"Latent Defects in Automobile. The owner or operator of an automobile is not liable for an accident resulting from a collision, if such accident is occasioned solely by latent defects in materials employed in construction of the machinery of the automobile which the usual and well-recognized tests afforded by science and art for the purpose fail to detect." Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., vol. 1, p. 488, § 672.
In Westlund v. Iverson, 154 Minn. 52, 191 N.W. 253, where the plaintiff, who was walking on a foot path adjacent to the highway, was struck by a rear wheel which came off by a passing automobile, he was denied recovery upon the ground that the accident was due to a latent defect.
In Walk v. Boudheim, 223 Wis. 514, 271 N.W. 27, 28, where the brakes locked, the court said:
"Unforeseen failure of automobile equipment to function because of a condition * * * not due to any negligence [of owner], and of which he could not reasonably be expected to have known in the exercise of ordinary care, does not necessarily render him negligent and liable."
In Bolin v. Corliss Co., 262 Mass. 115, 159 N.E. 612, 613, plaintiff, standing on the sidewalk, was struck by the rim of a tire which came off of a passing automobile. The Court said:
"In our opinion this evidence was not sufficient to charge the defendant with negligence. In the absence of anything to show that the appliances were defective, the defendant was not required as a reasonable person to remove the rim and connections and inspect them, before permitting Casper to use the car."
These cases are authority for the proposition that where an accident happens because of a latent defect in an automobile, the owner is not responsible if the latent defect could not be discovered by appropriate inspection and care of the automobile. Some seem to go a little further, but in none of these cases does it appear that the vehicles were reconstructed of material partly new and partly old by the owner or his agent, and that the accident occurred from a weakness in the older part of the reconstructed vehicle.
It will be recalled that Tynes bought an old Chevrolet truck which had been wrecked and abandoned by its former owner. This old truck was cut into pieces and the rear part of it used as an extension of the new truck by being welded to the frame. There is considerable testimony in the record to the effect that the wheels of the old Chevrolet, when attached to the new truck, were out of alignment. An expert produced by plaintiff, by the name of Henry Werner, testified that the distance between the second and third axles, the third axle being the old one, on the left side was fifty-two inches, whereas on the right side it was fifty-four inches, and that the gauge of the wheels of the old truck were three inches narrower than those of the new truck. The Judge of the lower court in his reasons for judgment, declared:
"Now this tandem device was constructed on request of the defendant by the regular garage man engaged by him. It was a novel construction. The misalinement of the wheels was visible to the naked eye, and it is rational presumption that if it was visible to the naked eye of the Court it should be visible to the owner or the operator of the truck."
The system of lubrication devised by the manufacturer of the new Chevrolet truck did not reach to the part of the old truck which had been attached to it. The bearings in the wheels of the old truck are lubricated by packing the wheels with grease, whereas the rear wheels of the new truck were lubricated automatically by a pressure system which forced the oil through the axle housing to the wheels. The evidence shows that the two rear wheels added by the defendant Tynes sustained a lateral pressure when the truck turned. In other words, the second pair of rear wheels did not turn when the first or guiding wheels of the truck turned, but were pushed sidewise. This resulted in their being pulled or dragged around every turn causing considerable strain on the bearings and axle.
Tynes contends that the cause of the accident could not have been discovered by any inspection which it was his duty to subject the truck to. His counsel says that the evidence proves the cause of the accident to have been the failure of a lock-nut device to hold the wheel on. This device he says "contains a `spider' washer which has a `lip' or `key' on the inner perimeter, which `lip' or `key' engaged in a little trough, called a `keyway', which is plowed out of the cylindrical axle. It is plain that this washer cannot turn on the axle unless the `lip' or `key' is sheared off; therefore it *Page 83 
was sheared off in the instant case, and the entire device simply unscrewed as any ordinary nut would". The failure of the bearings or lock-nut is said by defendant's counsel to have been caused by the introduction of grit or foreign matter. We read the following in his brief:
"Therefore, only remaining cause upon which all experts agree is that an unforeseen and unpreventable failure of the bearing was caused by grit or foreign matter getting into the bearing. And a daily inspection would not have prevented this or prevented the accident."
We are not sure that we can agree with counsel in his appreciation of the expert testimony since it is difficult to reconcile the many conflicting statements that the experts have made in the course of their testimony. However, the bearings were the same ones which were on the old truck when Tynes bought it for $125 and perhaps counsel is correct. If so, the situation is similar to one which we discussed in Rochefort v. Teche Lines, La.App., 186 So. 751, 753. In that case a public omnibus collided with an automobile and injured the driver and the defense was made that there was a latent defect in the brakes of the omnibus which caused the accident. In discussing this defense, we said:
"Without mentioning any further details of the evidence on this subject, which is largely cumulative, we are of opinion that its sum and substance falls far short of establishing the defense based upon a latent defect. In the first place, the bus was, at the time of the accident, six years old. It was one of ten busses purchased from an insolvent corporation in St. Louis, Mo., for $6,000 or $600 each, the original price of one bus being $15,000. If the brake rod and lock nut, which were introduced in evidence, were the original appliances installed by the manufacturer in 1930, and were as defective in material and workmanship as defendant would have us believe, we find it difficult to understand why the bus should have given such long service without having previously revealed its inherent defect by the failure of the brake to function long before the date of the accident under consideration. Moreover, we get the impression from the evidence that if this `lock nut' had been securely tightened the brake rod could not have worked loose, notwithstanding the fact that some of the threads were worn. The metal of which the parts of the brakes were constructed, whether inferior or not, did not separate and the only effect of the alleged inferior composition is that it caused the threads of the nut to wear."
A latent defect is a hidden defect and generally involves the material out of which the thing is constructed. If the grit, which counsel claims is the reason for the loosening of the lock nut and the cause of the accident, got into the axle bearings, it must have been because of wear and tear rather than an inherent defect in the materials composing the bearings.
It will be recalled that the wheels came off of the oldest part of the truck, that is to say, the part that had been welded to it after having been cut off of an abandoned truck. The testimony is that after it had been welded to the defendant's truck, it rolled some seventy-five thousand miles in his service. There is no evidence as to how long it had been used before the defendant bought it, but since it was abandoned it is likely that it ran many thousands of miles before Tynes bought it. The inspection which is required of a vehicle of this type is such as the circumstances demand in the interest of public safety.
When we come to consider the inspection which was given to the truck by its owner, we find that on every other trip to Tylertown, Mississippi, it was inspected by employees of Crawford's Garage and consisted of checking the transmission, the oil in the crank case and water in the radiator and battery and greasing other parts, for which a charge of seventy-five cents was made. The wheels were not taken off and it is contended that it was unnecessary to do so. While such an inspection might have been sufficient for the original truck, it was, in our opinion, quite inadequate for the patchwork truck of defendant. It seems to us that the rear wheels should have received a much more thorough inspection and should have been removed at frequent intervals, the bearings examined and every necessary precaution taken to prevent its becoming a menace on the public highway. We have no knowledge of the useful life of a truck and there is nothing in the evidence to enlighten us, but it would appear that these wheels, which must have traveled more than one hundred thousand miles, were either worn out completely or required replacement or reconstruction for their safe operation. *Page 84 
Defendants cite with apparent confidence the case of Franklin v. Illinois Central Railway Co. et al., La.App. 13 So.2d 125. In the Franklin case we held that a connecting and ultimate carrier was not responsible for injuries sustained by a workman engaged in unloading a boxcar, because of the fact that the door, which suddenly became detached from its fastening, fell on him, it appearing the carrier made proper and reasonable inspection. It is difficult to see how the holding in that case can give counsel any comfort here. To begin with the boxcar did not belong to the carrier and the only way that the defective door could have been discovered, would have been by breaking the seal and opening the door, which the railroad was not required to do and, as a matter of fact, had no authority to do. The routine inspection such as was given to all freight cars handled by the carrier was deemed sufficiently careful and thorough and all that the law required under the circumstances, but here we have a part of an old discarded or wrecked truck, which had been welded onto another truck and driven over the highways over seventy-five thousand miles. The oldest part of the truck, from which the wheels became detached, was three or four years older than the remainder of the truck. The differential had been removed from the rear axle and the original system of lubrication designed by the manufacturer rendered impossible. The welding had been poorly done so that the wheels were out of alignment. The long and short of it was that the rear end of this truck constituted a public menace as long as it rolled over the public highway unless it was subjected to frequent and most thorough inspections.
Our conclusion is that there is liability.
On the question of quantum, which plaintiff has asked to be increased to the amount claimed in her petition, we are of the opinion that the reasons given by the trial judge to the effect that the earning capacity of the deceased was such as to make the material damage sustained by his death less than under ordinary circumstances are correct. So far as the spiritual loss is concerned, that is to say, the deprivation of her husband's affection, we find that the deceased was by no means a model husband, for as plaintiff said when asked when was the last time that her husband had lived with her, "Well, it was about, it must have been three months he stayed all night". Under the circumstances we have concluded not to disturb the award made below.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.