Plaintiff, Jacob Schon, operates a store at No. 940 Common Street in New Orleans, selling leather goods, suit-cases, belts and other such articles. He does not own the premises in which he operates the store, leasing it from the owner. Above the store is a small hotel operated by the defendant, Leo James, who leases the premises operated by him as a hotel from the same landlord from whom the plaintiff leases. In both agreements of lease the tenants are required to keep the property in condition. In the hotel leased to James there was a hot water heater used in supplying hot water to the various plumbing fixtures. In the early morning of October 17 or 18, 1945, a leak developed in this heater, and as a result, water dripped through the floor of the hotel, through the ceiling of the store of plaintiff and damaged some of the merchandise which he had for sale in the store.
Schon brings this suit against James, charging that the damage was caused by fault on his part and claiming $329.29 as the loss in value sustained by the merchandise which was damaged. He also claims $5 as the cost of cleaning up the water, $85 as the cost of repairing the ceiling and repapering the store, and $15 for replacing certain electrical wires damaged by the water.
Defendant, after denying in his answer all of the allegations of the petition, on the witness stand admitted that the heater had leaked and had caused some small damage. He denied, however that the damage was extensive and he particularly resisted liability for the loss sustained, asserting that the leak in the heater had been the result of a latent defect which could not be discovered.
There was judgment for plaintiff for $400.49 and defendant has appealed.
[1, 2] Plaintiff maintains that the doctrine of res ipsa loquitur is applicable and that, therefore, the burden is on the defendant to prove the facts which would have the legal effect of relieving him from liability. That the doctrine of res ipsa loquitur is applicable we have no doubt at all, and cite only the classic case in our jurisprudence, Lykiardopoulo v. New Orleans C.R. Light Power Co. et al., 127 La. 309, 53 So. 575, 576, Ann.Cas. 1912A, 976:
"* * * In cases where the plaintiff cannot be expected to have any information as to the causes of the accident, whereas the defendant, on the contrary, must be assumed to be fully informed on the subject, and where the accident is of the kind which ordinarily do not occur when due care has been exercised, the rule of evidence is that the accident speaks for itself — res ipsa loquitur — that is to say, that a presumption of negligence arises from the fact itself of the accident. In such cases, the plaintiff not only need not allege the particular acts of omission or commission from which the accident has resulted, but need not even prove them. The accident itself makes out a prima facie case, and the burden is on defendant to show absence of negligence. Res ipsa loquitur. That rule is of peculiar applicability in cases of boiler explosions. * * *"
[3] The rule of law for which counsel for defendant contends, and which he says is applicable here, is stated in American Jurisprudence, Vol. 38, page 747, Sec. 87, as follows: *Page 533 
"It is a corollary of the maxim 'sic utere tuo us alienum non laedas' that everyone shall investigate, inspect and test the instrumentalities maintained by him, for the purpose of determining the possibilities of perils therein. Every peril, it is safe to say, including such as are termed 'latent' or 'hidden', need not be discovered, since liability for negligence in keeping a dangerous instrumentality is not absolute. If, however, common experience has demonstrated that dangers lurk in the method adopted or in the instrumentality maintained by a person, he rests under the obligation of ascertaining the peril and taking precautions to avoid injury therefrom. For example, the owner of a boiler is liable for any defects in the manufacture thereof that might have been discovered by a reasonable inspection and test; but if an explosion results from defects that could not have been discovered by such an investigation, he will not be held responsible. * * *"
This doctrine has often been recognized. We, ourselves, on at least two occasions applied it and held that it provided a good defense wherever the facts of the case make it applicable. See Ross v. Tines et al., 14 So.2d 80, and Rochefort v. Teche Lines, Inc. et al., 186 So. 751. However, in each of those cases we held that the defect was discoverable and that, accordingly, for the damage caused by the accident which resulted from the defect, the defendant was liable.
In the former of those cases (Ross v. Tynes, et al. [14 So.2d 83] ) we noted the difference between a situation in which there is a hidden defect in the material of which the piece of machinery is constructed and that in which the defect is caused by wear and tear alone. We said:
"A latent defect is a hidden defect and generally involves the material out of which the thing is constructed. If the grit, which counsel claims is the reason for the loosening of the lock nut and the cause of the accident, got into the axle bearings, it must have been because of wear and tear rather than an inherent defect in the materials composing the bearings."
If I purchase a new machine of a reputable manufacturer and a part breaks and damage is caused to someone else, my defense that the cause was a hidden defect will be more readily accepted than if the machine which I am using is one which I have had for a very long time and which has indicated that, because of wear and tear, it has obviously practically reached the end of its life.
[4] Even where the machine is a new one, because of the application of the doctrine of res ipsa loquitur, the burden is on the defendant to prove that the defect was latent and could not have been discovered by such careful examination as a reasonably prudent owner should give to such an appliance.
Let us look at the facts here. It is obvious that the heater was a very old one and had given trouble on several earlier occasions. Defendant's plumber says that he does not know how old it was but he added: "I know it is an old make." He stated that it had not been replaced merely because a new one could not be obtained, saying: "We could not obtain a new one to put in its place." The defendant himself said that the plumber had come to regulate it; that it had then sprung a leak; that the plumber had "brazed" it, and that then "it sprung another leak." While his testimony is a little confusing as to the number of leaks which had appeared previously, it is quite plain that there were at least two leaks; in fact, after mentioning these two leaks, he added: "In a couple of days, ten days, it sprung a bad leak, but the first leak was nothing much."
It is obvious to us that the heater was in very bad condition and that there was always grave danger that another leak might develop.
[5] Under such circumstances it will not do for one who is responsible for such an article to say that because he could not actually discover just where or when the new leak might manifest itself, such defect as might cause the leak is a latent one. The true cause of the loss here was not a latent defect but a worn out heater. The defendant continued to operate it at his peril.
[6] When we come to consider the extent of the damage and the loss sustained *Page 534 
by plaintiff, we find that he has proven that the electrical repairs were made at a cost of $15, that the estimate for repairing the damage to the ceiling and repapering the store was $85 and that the cost of cleaning up the damage was $5. Many of the damaged articles were produced in the trial court where the judge saw them. He allowed to plaintiff the cost of repairing the damage sustained by the interior of the store, the cost of replacing the electric wires and the cost of repairing and repapering the ceiling. He also allowed $295.49 as the loss in value sustained by the merchandise, making a total of $400.49. From the record before us we cannot say that he was in error in his estimate of the damage.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.