The judgment is reversed and the cause remanded.

### FRANKLIN v. M. K. & T. RY. CO. OF TEXAS.

#### No. 14019.

Court of Civil Appeals of Texas. Dallas.
May 27, 1949.

Rehearing Denied June 24, 1949.

Webb & Rogers, Sherman, for appellant.

Freeman, Wolfe, Keith & Milam, Sherman, for appellee.

YOUNG, Justice.

Appellant's suit was for damages arising from personal injuries sustained when struck by an object allegedly extending out from one of the defendant's moving cars and into the street where he was walking. At close of testimony the court granted defendant's motion for peremptory instruction with jury verdict in accordance; from which ruling and adverse judgment this appeal is taken.

Plaintiff, 21 years of age at time of trial, was a minor, 18 years old at time of injuries. He testified that on May 5, 1944, he was employed as a night cab-driver in the City of Sherman, and that on the morning in question he had gotten off from work, visiting around until about 11:30, then starting home at King and Branch Streets; that a line of defendant's railroad track occupies the center of Branch Street, running north and south, the east side of said street, paved with white rock, carrying all traffic; the part of street west of track being grassgrown with no paved walks on either side; that King and Magnolia Streets run east and west, a block apart, intersecting Branch Street; and while walking down the latter street in a southerly direction, on the west side and between above intersecting streets, a switch engine approached moving slowly north, pulling some four grain cars; that he was about 3½ feet from the west rail, watching the cars and where he was walking, and after the engine and one car had passed, some object projecting from side of the train struck him across the chest and knocked him back and under the second car; that he was caught in the car's under-equipage, brake rods, etc., and rolled over and over some 100 feet until a Mr. Joe McCollom, attracted by his cries, ran up and pulled plaintiff to safety. His injuries consisted generally of temporary bruises over entire body, broken left ankle and injured knee, testifying to permanent impairment of said limb.

The only record testimony in any wise explanatory of the object that struck plaintiff is revealed by his own narrative of the occurrence on cross-examination, viz.: "Q. You don't know what it was that hit you? A. It was an object protruding from the train. Yes, sir.

"Q. I am saying, what was it? Was it a stick? A. I don't know.

"Q. Was it a wire? A. I don't know.

"Q. You don't know what it was, do you? A. No, sir.

"Q. You didn't see it, did you? A. No, sir, I didn't see it.

"Q. You did not? A. I did not see the object.

"Q. Were you looking down when it struck you? A. I don't suppose I was. I could have been.

"Q. But you don't know where you were looking then? A. I could have been glancing down. I wasn't looking down.

"Q. But you had been watching that train as it was coming along there, had you? A. Yes, sir, I had.

"Q. And that track is straight right in there, isn't it? A. Yes, sir.

"Q. And if there had been an object sticking out you could have seen it, couldn't you? A. Maybe.

"Q. But you didn't see it? A. I saw no object.

"Q. These were all grain cars, weren't they? A. Yes, sir. * * *

"Q. And these cars on this particular train had sliding doors on them. You saw them well enough to know that, didn't you? A. Yes, sir.

"Q. And those sliding doors slide up against the edge of the car? Right up against the side of the car? A. Yes, sir.

"Q. And you didn't get hit in the face? A. No, sir.

"Q. You only got hit where? Right across the chest? A. I got hit across the chest. Yes, sir.

"Q. And it was not any wide object that struck you, was it? A. I don't know, sir.

"Q. Do you know whether it was as big as an inch across? A. I don't know that.

"Q. In other words, you can't give us any description at all of that object? A. I didn't see the object. No, sir.

"Q. You don't know how long it had been on the train or when it got on there, do you? A. No, sir.

"Q. You don't know whether it was part of the load, or not, do you? A. No, sir. * * *."

Continuing on cross-examination, he said:

"Q. And this object is something that you cannot tell us whether it was a rope or wire or what it was, can you? A. I don't think it was a rope or wire that would knock me back under the train. It would have given.

"Q. What was that? A. If it was a rope or wire I think it would have given there.

"Q. You are going on supposition there, aren't you? A. Yes, sir.

"Q. You don't know what it was? A. No, sir.

"Q. It could have been a rope. It could have been a wire. It could have been a plank. It could have been anything? A. Yes, sir.

"Q. You don't know? A. I don't know. No, sir.

"Q. You don't know when it got there? A. No, sir.

"Q. How long it had been there? A. No, sir. * * *

"Q. I believe your testimony was that when you were about even with the second wheel on the west side of this freight car— do you get what I mean? A. Yes, sir.

"Q. The second wheel toward the middle of the car, that when you were about even with that wheel is when you were struck, is that right? A. Approximately. Yes, sir.

"Q. There is no door on this grain car except a sliding door about the middle of the car, is there? A. That's right. Yes, sir.

"Q. And you were not even with the door, were you? A. I don't think I was.

"Q. Were the doors on these cars closed or open? A. I wouldn't be sure.'"

Plaintiff also stated that the protruding object knocked him back at about same speed of train.

He testified on further examination as not being positive whether he got the chest bruise when the object struck him or when he was being rolled over and over by the train; and that while under the cars he was hit by the axles, air hose, and practically everything there that was low enough to get to him. Chief Brown of the Sherman Police force, testifying, said that he arrived on the scene after plaintiff had been taken away in an ambulance; that the train and switch crew were still there, witness talking to some of the latter; that he neither examined the train nor saw an object protruding from any of the box cars. McCollom, plaintiff's rescuer, likewise testified that he saw nothing sticking out from the west side of these cars (not having time to observe anything of the kind or looking for any object).

The negligence charged in substance was (1) in defendant's failure to properly inspect its cars before moving same along a public street, resulting in an object projecting from its train and striking plaintiff; (2) the same facts constituting a temporary

public nuisance; and (3), alternatively, invoking the doctrine of res ipsa loquitur.

It is appellant's contention that the foregoing testimony establishes actionable negligence against the railroad under the rule stated by this Court in St. Louis Southwestern R. Co. of Texas v. Wilcox, 57 Tex.Civ.App. 3, 121 S.W. 588, 589, viz.: "The allegation that he was struck by a projection from a passing train while he was walking at a safe and reasonable distance from said train and injured is a sufficient allegation to charge liability, and, if proven, it devolves upon the railway company to show that it was without fault." But the rule above stated is not unyielding; and as indicated by Judge Rainey, it must have support in the facts proven, and for determination of liability, obviously must be adjusted to the circumstances of the particular case. For example, in St. Louis Southwestern R. Co. v. Wilcox, supra, the projecting object was shown to have been a cross-tie, with which material two cars of the train were loaded; negligence being inferable in the matter of improper loading. See, also, Missouri, K. & T. R. Co. v. Scarborough, 29 Tex.Civ.App. 194, 68 S.W. 196, writ refused. Likewise, in St. Louis Southwestern R. Co. v. Balthrop, Tex.Civ.App., 167 S.W. 246, the source of injury was identified as one of several 2 by 6 scantlings that had been permitted by railroad employees to remain loose in a stock car hurriedly crated just prior to the accident; and thereby the issue of proper inspection before placing the cars in transit was sufficiently raised.

■ Here we have no such factual background. Plaintiff Franklin says he was looking but could not see the projecting object; did not know what it was, or how or "when it got there"; that "It could have been a rope. It could have been a wire. It could have been a plank. It could have been anything"; his testimony as a whole refuting rather than tending to support a presumption that the unseen object was any part of defendant's equipment or load. Neither can we infer or presume that the object, whatever it was, had been attached to the train for such length of time as that

defendant should have discovered its presence. Quite obviously, in our opinion, it follows that any negligence attributable to defendant in the instant situation is based on nothing more than surmise and conjecture.

■ The Beaumont Court in Hawthorne v. Texas & N. O. R. Co., Tex.Civ. App., 84 S.W.2d 1015, 1016, under almost identical facts, upheld a like defendant's instruction in language which is adopted as controlling of the instant appeal: "We think the trial court properly instructed the verdict. The evidence of appellant failed to raise any issue for the jury as to any act of negligence charged in his petition. Appellant's own testimony shows that he did not see the alleged projection; * * * that he did not know whether the instrumentality which struck him was attached to any car or whether it was on a wheel or axle, and he admitted that it might have been a piece of heavy wire. There is nothing in the evidence to indicate any negligence on the part of the operatives of the train in any of the respects charged. For aught the record shows, the alleged projection which struck the appellant may have been some piece of wire or other object picked up by the moving train along the track in such manner *that the train crew, even by the exercise of extreme care and diligence, would not have known of it.* The burden was, of course, upon the appellant to establish the acts of negligence alleged. The acts of negligence charged against the railroad company could not be inferred from the mere fact that the appellant received an injury while standing near the passing train. It was necessary for the proof to go further and raise a reasonable inference that the injury resulted proximately from some act of negligence on the part of the operatives of the train charged in the petition. (Citing authorities.) * * * The rule of res ipsa loquitur has no application in this case, for the additional reason that the evidence fails to negative a reasonable probability that the injury complained of resulted from some cause other than the negligence of the railroad company. * * * Appellee's lia-

922

bility cannot be predicated upon a mere guess, surmise, or presumption when it is equally reasonable to presume that the injury resulted from some nonactionable cause. * * * Gulf C. & S. F. R. Co. v. Davis, Tex.Civ.App., 161 S.W. 932." (Emphasis ours.) See also Johnson v. Texas & Pac. R. Co., Tex.Civ.App., 117 S.W.2d 864.

While in the Johnson and Hawthorne cases above cited, the injured parties were licensees in contrast to the status of appellant here as an invitee on defendant's premises, liability of the company with respect to each in the operation or movement of its trains was the same; i. e., the duty to exercise ordinary care under the circumstances for their safety. 35 Tex.Jur., sec. 388, p. 598.

Appellant's points must be overruled and judgment of the trial court affirmed.