44 So.2d 504 (1950)
LEJEUNE et al.
v.
COLLARD et al.
No. 3220.
Court of Appeal of Louisiana, First Circuit.
February 17, 1950.
*505 Plauche & Plauche, Lake Charles, for appellants.
Thos. F. Porter, Lake Charles, Thos. L. Raggio, Lake Charles, for appellees.
FRUGE, Judge Ad Hoc.
This is a suit in tort by the plaintiff, Mrs. Nita LeJeune, individually, and as natural tutrix of her minor children, Bobby Joseph LeJeune and Dennis Joseph LeJeune, for the wrongful death of her husband and against the defendants, George W. Collard, operator of the Lake Charles Aviation Service and his insurer, the Firemen's Fund Indemnity Company.
Plaintiff alleges that her deceased husband, Hillman Joseph LeJeune, was the father of her two minor children, issue of their marriage, and that he was a veteran of World War II and as such was taking flying instructions under the G. I. Bill of Rights from the defendant, Collard, who operated an aviation school wherein he trained pilots, giving them a regular course of instructions with licensed instructors and under the supervision of the Civil Aeronautics Authority.
It is further alleged and admitted that the deceased had completed his dual training and had completed eleven hours of solo flight; that he had made only one cross-country flight prior to the fatal accident which was a dual flight with his instructor; that the accident in which the decedent was killed occurred while he was returning on the homeward leg of his first solo flight which flight was from Lake Charles, Louisiana, to Houston, Texas, and that the accident occurred at a point south of Sulphur and about ten miles west of Lake Charles.
It is further alleged that the cause of the accident and resultant death of the decedent was due solely to the gross negligence and carelessness of the defendant and sets out the following specific acts of negligence:
(1) "In allowing decedent to take off for a different cross-country flight when to defendant's knowledge, decedent did not have sufficient flying skill to make such a flight and when decedent especially lacked the skill with which to make an emergency landing in the event of an engine or structural failure."
(2) "In allowing decedent to takeoff on a certain cross-country flight in an aircraft which was in poor mechanical condition so that engine trouble and failure were certain to occur during defendant's extended flight."
(3) "In allowing decedent to take off in the said aircraft which had not been given proper and timely engine and aircraft checks and inspections; and in the failure to make the required repairs and other maintenance measures to place the aircraft in proper flying condition."
The defendant denies the above allegations and the case went to trial on the merits which resulted in the judgment of the Trial Court dismissing plaintiff's suit. Plaintiff appeals.
The Trial Judge found from the evidence that the above three specific acts of negligence were not supported by the evidence and that the evidence fell far short of convincing him with that degree of certainty requisite for plaintiff to recover. We have made a very careful study of this record with particular attention to the evidence and we have come to the conclusion that the Trial Judge ruled correctly. We will therefore not disturb his conclusions.
With respect to the first specific act of negligence alleged by plaintiff, the Trial Judge had this to say in substance, among other things, and we agree:
That the deceased was an apt pupil, that he had flown one hour more than is required for a solo cross-country flight; that the cross-country flight from Lake Charles to Houston was not a difficult one; that there are highways and railroads and landing fields interspersed to assist the pilot in this flight and that therefore this particular cross-country flight was not difficult and that the decedent did have sufficient flying skill and training to make the flight. Further, that the deceased had sufficient training in making emergency landings and in controlling his plane during emergencies.
Coming to the second specific act of negligence alleged, the Trial Judge, in substance, *506 came to the conclusion that there was positive evidence to the effect that the particular plane flown by the deceased at the time of the accident had been flown by the instructors immediately prior to the time that the deceased started on his fatal flight; that these men had flown the airplane and that the plane was in good mechanical condition and it was the best plane among the ten which were owned and operated by the defendant Collard.
With respect to the third act of specific negligence alleged by plaintiff, the Trial Judge stated that it was not substantiated by the evidence in the case; that while it was true that the log book did not show that the hundred-hour inspection had not been made, as required by CCA, that as a matter of fact, while not noted in the log book, the inspection was actually made and that the only negligence on the part of the defendant was not to the making of the inspection but merely making a notation of said inspection in the log book and that the failure of defendant to note such inspection in the log book did not amount to negligence; that the evidence conclusively proved that the inspection was made prior to the time the student pliot started his cross-country flight and that the hundred-hour inspection was completed and that the inspectors found the plane to be in good, safe flying condition; the evidence further shows that the student pilot flew the plane from Lake Charles to Houston and back from Houston to within ten miles of Lake Charles without having any recorded trouble and that the plane was, therefore, in a good and safe flying condition at the time it was turned over to the student pilot. The Trial Judge further states that the only evidence in this case which might be considered as showing that the accident was due in any wise to the failure of the aircraft or its engine is the testimony given by the witnesses who were at or near the scene of the accident. To put this testimony in narrative form, the evidence shows that the plane in which the deceased was flying was coming from a westerly direction at a rather high altitude; that some of the witnesses testified approximately three thousand feet; that when the motor quit or was shut off the deceased descended to within a few feet of the ground; that when he was within a few feet of the ground he circled over the house of one of the witnesses and near to another house, making at least three complete circles and passing so close to the house and so close to the ground that one of the witnesses crouched down thinking that he was in danger of being hit by the plane; that while the defendant was circling in such a manner, the motor was popping or running intermittently; that when he passed over and near the house for the last time, and in order to avoid an electric wire that was strung along a highway in front of the house, he evidently tried for altitude with his plane but because of an insufficient amount of speed or power, the plane went into a stall and nose-dived into the ground; and that the ignition was on and the throttle wide open after the accident.
It is strongly argued by counsel for plaintiff that the motor of the plane was not functioning properly and that the deceased was seeking a landing place which was the cause of his circling near to the houses and near the ground as has been described. The Trial Judge could not accept this theory and stated that the evidence conclusively showed that the deceased was not looking for a landing place, many of which were available in the immediate neighborhood of the accident, but was flying near to these houses in a playful attempt to disturb or terrify the occupants and that the accident resulted from his miscalculation of the power of the motor of the plane to pull him up and out of danger. He further states that the plaintiff has failed to establish the negligence of the defendant in any degree whatsoever and thus dismissed the suit.
As heretofore stated we agree with the Trial Judge on his finding on the facts. Plaintiff has especially pleaded in Article 17 of his petition the application of the doctrine of res ipsa loquitur and in his argument before this court has made a very able presentation of that issue. That doctrine has no application in this case for the reasons that the defendant did not have possession or control of the accident and because the defendant alone could not be expected *507 to have had knowledge as to the cause of the accident and that for the further reason that we have come to the conclusion that the accident might have occurred through the negligence of the deceased, LeJeune, in indulging in playful flying at a low altitude over the houses at the site of the accident.
In the case of Ross v. Tynes et al., 14 So.2d 80, which is an Orleans Court of Appeal case, the surviving widow brought suit for the death of her husband, who was killed while working on a sidewalk, when a double wheel of a passing truck came off and struck him.
The court in that case had occasion to define the doctrine of res ipsa loquitur, 14 So.2d at page 81 as follows:
"In other words, when an injury is caused by an instrumentality under the exclusive control of the defendant, as in this case, and it is such as would not ordinarily happen if the party having control of the instrumentality had used proper care, there arises an inference or presumption of negligence. Whether the evidence is such as to exonerate the defendants remains to be seen."
In one of the Coca Cola cases, towit (Piacun v. Louisiana Coca-Cola Bottling Co., et al.), another Court of Appeal case from Orleans, 33 So.2d 421, 423, wherein a coca cola bottle exploded in the hands of a cold drink merchant, and where he relied for recovery on the res ipsa loquitur doctrine, the court had this to say:
"The doctrine, where it is applicable, is based on the theory that because the thing which causes the accident is completely within the control of the defendant, or because the defendant alone can be expected to have knowledge as to the cause, the explanation must come from that defendant."
At page 424 of this opinion this doctrine was further discussed in the following language:
"only conditionally, that is to say it has application only after the person to whom the bottles were delivered shows that between the time of the delivery and the time of the accident, the particular bottle involved was not `opened or tampered with or improperly handled.'"
The court found that the defendant carefully handled and selected the bottles, etc., and that therefore there was no negligence shown, and accordingly, plaintiff's demands were rejected.
In the case at bar, LeJeune, the pilot, and not Collard, the owner of the plane, was in exclusive control of the aircraft, and according to the evidence LeJeune had every opportunity during his few minutes of "buzzing" to put the plane into a maneuver that would crash it.
In the case of Pittman v. Gulotta, another Orleans Court of Appeal case, 25 So.2d 343, 344, is relied on by both counsel for plaintiff and for the defendant in this case. Judge McCaleb was the organ of the court and at page 345 of this opinion he had this to say with respect to the application of the doctrine:
"We are unable to discern the applicability of the doctrine here. Res ipsa loquitur (or the thing speaks for itself) pertains only to cases where the nature of the acciden is such that it would not ordinarily happen in the absence of fault. It has pertinence in matters where the instrumentality causing the damage explodes or otherwise fails to function properly and, in other instances, where, because of the peculiar facts involved and the relationship of the parties, the defendant and not the plaintiff is in better position to produce explanatory evidence in order to absolve himself from an inference of fault. Neither one of these circumstances appear herefor the accident admittedly did not occur as result of a mechanical or electric failure of the fan and it is certain that plaintiff, whose finger came in contact with the fan, is in far better position to explain the accident than the defendant, who was not present and did not know anything about the occurrence until after it happened."
We think that in our case here the pilot who was flying the air plane at low altitudes making turns, flying over houses, was in a better position to explain this accident than was the defendant Collard who was at his place of business in Lake Charles.
*508 The doctrine of res ipsa loquitur has no application in this case because of the fact that the accident might have occurred through the negligence of the pilot, LeJeune.
This result is well recognized and stated in the case of Dunaway v. Maroun et al., La.App., 178 So. 710, 712.
"The rule will not be applied where the evidence discloses that the injury might have occurred by reason of the concurrent negligence of two or more persons or causes, one of which was not under the management and control of the defendant."
See also the case of Gerald et ux. v. Standard Oil Company of Louisiana, 1934, 204 La. 690, 16 So.2d 233, 237.
We are further of the opinion that the doctrine of res ipsa loquitur has no application in this case for the reason that it has been affirmatively shown by the evidence that the defendants were guilty of no negligence. The case of Anderson v. London Guarantee and Accident Company, La. App., 36 So.2d 741, to-wit:
"An essential element in the application of the doctrine of res ipsa loquitur is a showing that a defendant failed to use proper care as to the instrumentality under his control." 36 So.2d page 745.

* * * * * *
"It is too well established to admit of argument that even under the doctrine of res ipsa loquitur there must be a showing of some negligence, either active or passive, on the part of the defendant. This is to say that it is not sufficient simply because an agency or instrumentality under the control of a defendant causes injury, liability on the part of such defendant is necessarily implied. There must be a showing that the accident is of a nature which does not ordinarily occur where due care is exercised (Schon v. James [La.App., 28 So.2d 531] and Watkins v. Gulf Refining Co. [206 La. 942, 20 So.2d 273], supra), and, further there must be a showing either of some act of negligence or of the omission of some precaution which constituted an actionable want of care. Our jurisprudence is replete with cases which clearly define the degree of care required of an actor, from some of which we cite extracts as follows:
"`It is incumbent upon plaintiff, in order to recover, to show some negligence on the part of the defendants * * *.'" Woodley v. Service Cab Co. et al., La.App., 159 So. 124, 125.
Plaintiff, however, is vigorous in the presentation of the application of the doctrine of res ipsa loquitur in this case. He points out that the defendants admit in answer to plaintiff's allegation that the aircraft was under the exclusive care and maintenance of defendant and his employees, and that at no time did decedent ever engage in the repair, care or maintenance of the said aircraft, and that defendants further admit that the said aircraft and its engine have been maintained and repaired exclusively by its owner and its employees.
He further points out that in this case, in view of the above admissions, the plaintiff was therefore in no position to show the precise reason or cause of the engine's failure. He then goes on to argue that under the general well established principles the doctrine of res ipsa loquitur peculiarly and forcefully applies to the present case. He cites the case of Gerald v. Standard Oil Co. of Louisiana, 204 La. 690, 16 So.2d 233 and quotes from the syllabus which in effect states that where the plaintiff cannot be expected to have any information as to the cause of accident, while on the other hand the defendant must be assumed to be fully informed on the subject, and accident is of the kind which ordinarily do not occur when due care is exercised, rule of evidence is that the accident speaks for itself and that a presumption of negligence arises from the fact of the accident. He then calls to our attention the language used by Judge McCaleb set forth in Pittman v. Gulotta case supra wherein it was stated that the doctrine pertains only to cases where the nature of the accident were such that it would not ordinarily happen in the absence of fault; further that it has pertinence where the instrumentality causing the damage explodes or otherwise fails to function properly and that because of the peculiar facts involved and the relationship of the parties, the defendant and not the *509 plaintiff is in a better position to produce explanatory evidence in order to absolve himself from an inference of fault.
Along the same line of thought he cites and quotes from Schon v. James, La.App., 28 So.2d 531.
We do not find fault with the law called to our attention hereinabove by able counsel but in view of the facts in this case we do not believe that they are applicable here. We have already found that the accident was not caused by any negligence of the defendants and that to the contrary the aircraft was in good condition up to the time when the accident occurred. The air plane and the resultant unfortunate accident was under the control and knowledge of the plaintiff and not the defendant.
The judgment of the District Court is affirmed. Costs to be paid by plaintiff-appellant.