CONCEPCIÓN CINTRÓN and ESTEBANÍA CASTRO, Plaintiffs and Appellants, *v.* ANTONIO ROIG, SUCESORES, *S. en C.*, Defendant and Appellee.

No. 10873.  Argued May 8, 1953.—Decided May 29, 1953.

958

*Bolívar Pagán* for appellants.   *F. González, Jr.,* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

On September 3, 1952, the Humacao Court of the Superior Court of Puerto Rico rendered judgment dismissing a complaint in an action for damages filed by the appellants against Antonio Roig Sucesores, *S. en C.*

It is alleged in the complaint that a locomotive engine belonging to the appellee ran over a boy, Isabelo Cintrón Castro, killing him.   The trial court made the following findings of fact:

"(1)  That the Guayanés Road which crosses from Aguacate to the beach is a public road.

"(2)  That at a distance of about one kilometer there is another road which leads to a property called 'Comuna,' and is known as 'Comuna Road.'

"(3)  That this 'La Comuna' road is located within defendant's private property and on the date of the accident was used by defendant's vehicles as well as by its workmen, the neighbors not being forbidden to use said road.

"(4)  That 'La Comuna' road, because of its nature, was on the date of the accident a private cart road used by the public.

"(5)  That at the entrance of 'La Comuna' road from the Guayanés road and close to the place of the accident there was, at the time of said accident, a gate which gave access from

one road to the other going across a small parcel of land belonging to the defendant, devoted, during the grinding season, to the delivery and carting of sugar cane.

"(6) That the engine (locomotive) was going from the factory (Central) towards the property called Isleta hauling thirty-five empty cars for said Isleta colony.

"(7) That the boy, Isabelo Cintrón Castro, was, on the date of the accident, nine years, ten months and seventeen days old and he was an intelligent schoolboy.

"(8) That on March 19, 1949, Isabelo, the deceased boy, was together with his older brother, Andrés Cintrón Castro, getting some grass to be fed to some rabbits.

"(9) That both children had entered the property of the defendant by the side having access from the Guayanés road to 'La Comuna' road, and before they had started to cut the grass at that precise moment defendant's engine No. 101 driven by Nicacio Jiménez Concepción passed by hauling thirty-five (35) cars towards the beach and Isleta.

"(10) That upon seeing the engine (the Tony) as he used to call it, the boy, Isabelo Cintrón Castro, ran towards it inviting his older brother to climb into the cars.

"(11) That although Andrés Cintrón Castro warned his younger brother not to climb, the latter, however, climbed into one of the last rear cars.

"(12) That when the engine passed by the place known as 'La Plaza' (where the cane is unloaded to be hauled into the cars) it was not going fast.

"(13) That although Andrés Cintrón Castro saw his younger brother climb on the side of one of the cars, he did not see what happened thereafter.

"(14) That the boy, Isabelo Cintrón Castro, was found dead, beheaded, in the tracks at a short distance from the place where he had climbed.

"(15) That the accident occurred about 2:30 p.m. on May 19, 1949.

"(16) That when the engineer, Nicasio Jiménez Concepción, returned about half an hour later, loaded with canes, he saw the body of the boy on the track and called to notify the accident.

"(17) That about thirty or sixty minutes later, Vicente Ortiz Reyes, Corporal of the Insular Police, arrived at the place of the accident, and proceeded to conduct a preliminary investigation.

"(18) That Corporal Ortiz Reyes found no eyewitnesses except Andrés Cintrón Castro, the brother of the deceased, whom he took to District Attorney Modesto Velázquez Flores.

"(19) That Andrés Cintrón Castro, the brother of the deceased boy, testified before District Attorney Modesto Velázquez Flores on May 20, 1949, signing the statement in his own handwriting."

The plaintiff appealed to this Court and assigned the following errors:

"First error: The lower court erred in rendering judgment contrary to the evidence and in deciding that the boy, Isabelo Cintrón Castro, was guilty of contributory negligence, solely on the basis of a testimony given by the other boy, Andrés Cintrón, outside of the court during the District Attorney's criminal investigation of the accident.

"Second error: The lower court erred in not believing the two only eyewitnesses, who were not contradicted, Juan Bautista Santiago and Tomás Ortiz.

"Third error: Even assuming that pursuant to law, no credit should be given to the aforesaid only eyewitnesses, the lower court erred in not granting the complaint, under the rule of *res ipsa loquitur* in view of the facts and circumstances of the case."

The plaintiffs presented Juan Bautista Santiago and Tomás Ortiz as their only two eyewitnesses. They said, in brief, that the engine was driven at an excessive speed, from 60 to 80 miles per hour; that the boy, Isabelo Cintrón, was walking on the track in order to cross a road, with his back towards the engine; that the conductor gave no warning whatsoever of its proximity, and sounded no bell, whistle or claxon, and struck the boy, beheading him. The trial court expressly stated in its opinion that it did not believe the testimony of these two witnesses, and gave specific reasons showing that that testimony was not worthy of belief. The court *a quo* pointed out, for example, that considering the evidence as a whole and the inspection made by the court, it was entirely improbable and implausible that the particular engine in question could run at the speed indicated by those wit-

nesses at the specific place indicated by them; that during the police investigation at that same place about an hour after the accident, the aforesaid two witnesses for the plaintiffs were not there and did not inform at any time whatsoever that they were witnesses, and no one reported that said two persons had witnessed the accident; that they did not testify before the Police or the District Attorney; that they testified, as alleged in the complaint, that the accident occurred on May 23, 1949, when in fact, and in accordance with objective and documentary evidence, the accident occurred on May 19 of that year and that one of said witnesses, Juan Bautista Santiago, denied, during defendant's cross-examination, that he was related to the deceased, the evidence having subsequently shown that he was a foster brother of the boy's mother and that he lived in the boy's house, as Juan Bautista himself later admitted. After thoroughly examining the entire evidence presented and especially the testimony of the aforesaid two witnesses, we have come to the conclusion that we should not set aside the weighing of that testimony by the court *a quo*. Said court did not commit manifest error in weighing the testimony of those two witnesses and, therefore, it did not err in connection with this aspect of the case.

■ However, it is definitively clear that the trial court erred in basing some of its findings on an affidavit of the boy, Andrés Cintrón, the victim's brother. The day after the accident Andrés Cintrón testified before the Prosecuting Attorney of Humacao, in brief, that shortly before the accident he was with the victim at the place where the accident occurred and, notwithstanding his warnings, his brother climbed into one of the train cars and was later found beheaded. The defendant presented him as a witness and he then testified that when the accident occurred he was at home and not with his brother, wherefore he did not see the accident, thus denying what he had said in his affidavit. The defendant, after the proper procedure, presented that affidavit in evi-

dence in order to challenge the credibility of the witness, and the court admitted it. The Humacao Court thereafter based some of its findings on the statements of Andrés Cintrón in his affidavit and, on that basis, concluded that the victim's action in climbing one of the cars was the cause of the accident, the doctrine of *res ipsa loquitur* therefore not being applicable according to the court *a quo*. Now, undoubtedly Andrés Cintrón's affidavit contained statements inconsistent with his testimony in court and such affidavit could be used and considered by the court in order to challenge, affect or discredit the witness, but the statements contained in the affidavit could not be considered as independent and positive evidence on the merits of the case, nor could they serve as a basis for any finding regarding specific facts. *People* v. *Colón*, 52 P.R.R. 401; *People* v. *Marchand*, 53 P.R.R. 640; *People* v. *Pérez*, 43 P.R.R. 566; *People* v. *Lafontaine*, 43 P.R.R. 21; *People* v. *Rojas*, 16 P.R.R. 241. Although in Wigmore (Vol. 3, pp. 687, 688, § 1018, 3d ed.) said rule is analytically criticized when applied to cases where the witness is present in court, available for cross-examination, it is, nevertheless, recognized that that is the general rule, on the basis of the reasoning that when two incompatible versions of the same witness are presented, the witness must have lied in one of them. Such evidence is useful in order to prove the repugnancy existing between two testimonies. The fact of the repugnancy in itself may imply the lack of credibility of a witness who is in conflict with himself, but it does not mean that the former version is the true one. As pointed out in Wigmore, "We simply set the two against each other, perceive that both cannot be correct, and immediately conclude that he has erred in one or the other,—but without determining which one. It is repugnancy and inconsistency that demonstrates his error, and not the superior credibility of the prior statement. Thus, we do not necessarily accept his former statement as replacing his present one; the one merely neutralizes the other as a trustworthy one."

■ There was no testimony of any other witness in this case setting forth the version contained in Andrés Cintrón's affidavit. Therefore, the findings of the court *a quo* to the effect that the boy involved in the accident climbed or got into one of the cars, lack an adequate basis, and in this connection the court erred. However, such error was harmless, and hence does not warrant the reversal of the judgment which should be affirmed on other grounds. In the first place, we have seen that the Humacao Court did not believe plaintiff's evidence and, therefore, the plaintiffs did not bear the burden of proof and did not establish, with their evidence, a case of negligence and liability on defendant's part. Moreover, dispensing with plaintiffs' evidence and considering the evidence as a whole, defendant's evidence, believed by the court *a quo*, showed that there was neither negligence nor liability on the part of the defendant. Under such circumstances, the findings of the court *a quo* in connection with Andrés Cintrón's statements in his affidavit, although erroneous, do not constitute a reversible error and should be considered as unnecessary for the final disposition of the case and as surplusage. A judgment supported on other grounds is not vitiated by findings unsupported by evidence. 5 C.J.S. 1192, 1193; *Martinelli* v. *Luis*, 213 Cal. 183; *Smith* v. *Lightston*, 182 Cal. 41.

■ A peculiar aspect of this case is to the effect that the Humacao Court held that the doctrine of *res ipsa loquitur* was not applicable because the evidence contains a reasonable explanation of the cause of the accident, consisting, according to the Court, in the child's contributory negligence in climbing into one of the moving cars. In so deciding, the court rested exclusively, erroneously, as we have indicated, on the affidavit of Andrés Cintrón. Therefore, the ground set forth by the trial judge to declare inapplicable the doctrine of *res ipsa loquitur* lacks virtuality and is untenable for lack of support in the evidence. That notwithstanding, considering the entire evidence presented, no negligence was shown on

the part of the defendant or its agents, and the aforesaid doctrine of *res ipsa loquitur* is not applicable hereto. We shall see.

Dispensing with the evidence offered by the plaintiffs, since it was not believed by the court, and ignoring Andrés Cintrón's affidavit, since it cannot serve as independent evidence on the merits of the case, the testimony of Nicasio Jiménez, the engineer and defendant's witness, prevails. The court *a quo* believed him. He testified that the engine was moving quite slowly, at a moderate speed, that he did not see the boy until the return trip when he saw the boy, beheaded, lying across the track, and that he was never aware of any collision or impact.

The doctrine of *res ipsa loquitur* is a rule of evidence which is tantamount to a rebuttable inference of negligence under certain circumstances; that is, when at least three requirements are present: the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; it must be caused by an agency or instrumentality within the exclusive control of the defendant; and it must not have been due to any voluntary action or contribution on the part of the plaintiff. *Hermida* v. *Feliciano*, 62 P.R.R. 54. It is a rule of evidence that gives the court or jury the right to infer that negligence existed in an accident due to the manner and special circumstances in which the accident occurred, and that such an inference may be destroyed by the defendant's evidence. *Hermida* v. *Feliciano, supra.* It authorizes, but does not oblige, the trier to conclude that there has been negligence. *Hermida* v. *Feliciano, supra; González* v. *P. R. Ry., Light & P. Co.*, 34 P.R.R. 545; *Rodríguez* v. *White Star Bus Line*, 54 P.R.R. 294. In dispensing with plaintiffs' evidence, it appears from Nicasio Jiménez' testimony that he was conducting the train at a moderate speed, taking all proper precautions. That neutralizes and overrides any possible inference of negligence. But going even farther, there is no margin in this case to apply the

doctrine of *res ipsa loquitur*. One of the above-mentioned requirements refers to a situation where the greatest probability is to the effect that the accident was caused by the negligence of the defendant. If the facts and circumstances of the case give rise to two conflicting inferences, one to the effect that due care was exercised and the other to the effect that negligence existed, the doctrine is not applicable 38 Am. Jur. 1000. The doctrine is not applicable if there is any other probable cause from which it might be inferred that there was no negligence, (*Wilson* v. *Colonial Air Transport*, 180 N. E. 212), and it is especially not applicable if the facts affirmatively show that there was no negligence. *Le Jeune* v. *Collard*, (La. App.) 44 So. 2d 504, 17 A.L.R. 2d 550. It has been specifically decided in cases of train accidents that if the evidence is compatible with the absence of negligence, no presumption is raised. 75 C.J.S. 399; *Chicago, R. I. & P. R. Co.* v. *McClanahan*, 173 F. 2d 833; *Martin* v. *Southern Pac. Co.*, 46 F. Supp. 957; *Indiana Harbor Belt R. Co.* v. *Jones*, 41 N. E. 2d 361; *Risberg* v. *Duluth, Missabe & Iron Range Ry. Co.*, 47 N. W. 2d 113.

In *Franklin* v. *M. K. & T. Ry. Co. of Texas*, 221 S. W. 2d 918, 921, an object projecting from a train struck a pedestrian who was walking near the track. It was decided that negligence could not be inferred from the fact of the impact itself, since the evidence did not exclude the reasonable probability that the injury resulted from some cause other than defendant's negligence.

The case of *Puckhaber* v. *Southern Pacific Co.*, 132 Cal. 363 is important and has been discussed by textwriters. 60 Yale L. J. 761, 763, 764, "Legal Cause." A backing engine killed a pedestrian and it was proved that the engine had no light. It is held that, even assuming negligence on the part of the defendant, it was not established that such negligence was the cause of the accident, inasmuch as in the absence of other evidence, neither what happened when the impact occurred, nor the form and manner in which the accident oc-

curred, were shown, and what happened was compatible, for example, with the probability that the deceased threw himself suddenly onto the track, and it was pointed out that the fact of the death itself did not give rise to the presumption that the absence of light had been the cause of the death.

In the case at bar, not only was there evidence believed by the court *a quo* to the effect that the engine was moving slowly, at a moderate speed, without any negligent act having been performed, but also the fact itself that the boy was found dead, beheaded, along the track, was compatible with the probability that death was not caused by any negligence on the part of the engineer. It was compatible, for example, with the probability that the child had thrown himself suddenly in front of the train, or that he had boarded, or climbed into one of the cars and fell off the train negligently. Although the ground expressed by the court *a quo* was mistaken, it did not err in deciding that the doctrine of *res ipsa loquitur* was not applicable to this case.

In *Sucn. of Benn et al.* v. *Sucrs. of C. & J. Fantauzzi*, 33 P.R.R. 734, it was decided that to let down a grade on a dark and rainy night a railway car, inside of which there was a tank containing petroleum, raised a presumption of negligence in a case for damages and the doctrine of *res ipsa loquitur* applied. In *Román* v. *Muebleria Central*, 72 P.R.R. 320, an automobile, parked in a wide and straight road, was struck by another vehicle, the former parked car falling on top of a person changing a tire. It was decided that it was prima facie sufficient to establish that the accident would not have occurred if the chauffeur of the vehicle that struck said automobile had not been negligent. It is enough to set forth the facts involved in those two cases to show that they are not applicable to the circumstances of this case.

The Supreme Court of Spain, in its Judgment of July 10, 1943, decides that although the view of objective liability in knock downs by automobiles is not consecrated by legislation, it does not exclude the fact that in cases where a fact

which by itself determines the probability of fault, is evident, such fault may be presumed. In the case at bar the fact itself that the child was found dead on the track did not show by itself the probability of fault. The judgment of June 12, 1900, of that same court, is more applicable. In that case a person attempting to cross the track was killed by a train, and it was decided that the existence of an alleged fault or negligence is not sufficient to justify compensation if it is not shown that such cause and none other gave rise to the injuries and that, since the manner and circumstances surrounding death were not justified, there was no liability.

The reasoning we have adopted in this opinion as to the inapplicability of the doctrine of *res ipsa loquitur* is the same reasoning adopted by textwriters in recent studies on this problem. See Professor Seavey's article in 63 Harv. L. Rev. 643: *"Res Ipsa Loquitur: Tabula in Naufragio";* Northwestern L. Rev., February 1953 issue, *"Symposium Issue: The Law of Torts, Res Ipsa Loquitur,"* Vol. 47, p. 847; Harper, *Readings in Torts,* Vol. 1. p. 281; 30 Ill. L. Rev. 980; 35 Mich. L. Rev. 680; 22 Ill. L. Rev. 724; 22 Corn. L. Q. 39; 10 So. Calif. L. Rev. 166, 459, 467; 37 Cal. L. Rev. 183 Prosser: *"Res Ipsa Loquitur in California."*

The judgment appealed from will be affirmed.

Mr. Justice Belaval concurs in the result.